IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRIAN ANTON OAK,

               Plaintiff,

    v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

               Defendant.

OPINION AND ORDER

22-cv-138-slc

---

Plaintiff Brian Anton Oak seeks judicial review of a final decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, denying his claim for disability insurance benefits (SSDI) and supplemental security income (SSI) under the Social Security Act. 42 U.S.C. § 405(g). Oak contends that the administrative law judge (ALJ) who denied his claim failed to properly evaluate the medical opinions of consultative examiner, Dr. Marlin Trulsen, and state agency reviewing psychologist, Dr. Beth Jennings.[1] Because I am not persuaded that any of the issues raised by Oak warrant remand, I am affirming the Acting Commissioner's decision denying Oak benefits.

## FACTS

The following facts are drawn from the Administrative Record (AR),[2] filed with the Commissioner's answer in this case:

---

[1] In his initial brief, Oak argued that the ALJ failed to adequately support her finding that the jobs identified by the vocational expert existed in significant number in the national economy. In his reply brief, Oak states that he is dropping this argument in light of recent case law. Therefore, I have not considered it.

[2] Because of its length, the record is filed in several separate docket entries: AR 1-524 in dkt. 9, AR 525-1045 in dkt. 9-1, AR 1046-1612 in dkt. 9-2, AR 1613-2260 in dkt. 10, AR 2261-2559 in dkt. 10-1, AR 2560-2677 in dkt. 10-2, AR 2678-2979 in dkt. 11, AR 2980-3293 in dkt. 11-1, and AR 3294-3760 in dkt. 11-2.

On November 19, 2015, Oak filed SSDI and SSI applications for a period of disability beginning on April 2, 2015, when he was 37 years old. AR 198, 214. The Agency denied his claims initially on February 25, 2016, and then on reconsideration on October 5, 2016. *Id.* Following a hearing held on November 8, 2018, ALJ Corinne McLaughlin denied benefits on February 7, 2019. AR 198, 215. Oak sought judicial review of that decision, and this court remanded the case pursuant to the parties' joint stipulation in January 2021.[3] AR 1891. The Appeals Council directed the ALJ to further consider the opinions of Dr. Trulsen and Dr. Jennings, to reconsider Oak's residual functional capacity (RFC), and to obtain testimony from a vocational expert (VE). AR 1729.

At a telephonic hearing held on October 26, 2021, Oak amended his onset date to December 1, 2018. AR 1729. In a written decision entered on November 15, 2021, ALJ McLaughlin again denied Oak benefits. She determined that Oak is severely impaired by anxiety disorder, panic disorder, alcohol abuse disorder, degenerative disc disease, status post L4 fracture, late effects of a left ankle fracture and wrist fracture, Lyme disease, coronary artery disease, hypertension, and fibromyalgia. AR 1732. In rating the severity of Oak's mental impairments at steps 2 and 3 of the sequential evaluation process, the ALJ found that the evidence supported moderate limitations in all functional areas. AR 1738-39.

After finding that Oak's impairments were not severe enough to meet or medically equal the criteria for a listed disability, AR 1733-40, the ALJ found that Oak retained the RFC to

---

[3] On April 14, 2020, Oak filed subsequent claims for disability, which were consolidated with the remanded claims. AR 1729.

2

perform light work with the following mental limitations:[4] understanding, remembering, and carrying out simple, routine instructions and tasks; occasional interaction with supervisors and coworkers; no work with the general public, apart from incidental contact; low stress work, defined as work involving only simple, work related decisions; only occasional changes in the work setting; and no production-paced work, such as a moving assembly line or hourly quotas (though bench work and daily quotas would be acceptable).  AR 1740.

The ALJ considered various medical opinions related to Oak's physical and mental limitations in making the RFC assessment.  Relevant to this appeal is a September 2016 consultative psychological examination performed by Dr. Trulsen, AR 777-80, and the opinion of Dr. Jennings, who reviewed the record for the agency in October 2016, AR 288-89, 291-93. The ALJ gave little weight to most of these physicians' opinions, finding them inconsistent with (1) a 2020 consultative psychological examination by Dr. Marcus Desmonde, (2) Oak's lack of specialized mental health care, and (3) Oak's overall functioning.  AR 1738-39, 44-45.

The ALJ summarized Oak's subjective complaints, including that he had difficulty being around other people; had poor concentration; could add, subtract, multiply, divide, and read simple items but had difficulty with more complex items; needed his wife's help with disability forms and reminders from coworkers in prior jobs; and had anxiety attacks that caused him to miss work.  AR 1741.  The ALJ determined that Oak's medically determinable impairments could be reasonably expected to cause his alleged symptoms, but the ALJ was not persuaded that Oak was as limited as Oak claimed to be.  The ALJ cited Oak's conservative course of care,

---

[4] The ALJ also assessed several physical limitations that I have not listed because they are not relevant to Oak's appeal.

minimal findings on mental status examinations, and overall functioning as reasons for not crediting his allegations of disabling symptoms.  AR 1742.

Relying on the testimony of a vocational expert, the ALJ found that Oak could perform work in the representative occupations of small products assembler, silver wrapper, and paper pattern folder.  AR 1752.  Therefore, the ALJ concluded that Oak was not disabled at any time from his onset date through the date of her decision.  The Appeals Council declined to review the ALJ's decision, making that decision the final decision of the Acting Commissioner for purposes of judicial review.

## OPINION

In reviewing an ALJ's decision, I must determine whether the decision is supported by "substantial evidence," meaning "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).  This deferential standard of review means that the court does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] judgment for that of the Commissioner." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7ᵗʰ Cir. Apr. 14, 2021) (quoting *Burmester v. Berryhill*, 920 F.3d 507, 510 (7ᵗʰ Cir. 2019)); *see also Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7ᵗʰ Cir. 2022) (noting substantial evidence is not high threshold:  "[w]e will affirm ALJ decisions to deny disability benefits when the ALJ follows applicable law and supports its conclusions with substantial evidence.").  We also do not "scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the administrative law judge must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718,

721 (7ᵗʰ Cir. 2014) (citations omitted); *see also Deborah M.*, 994 F.3d at 788 ("an ALJ doesn't need to address every piece of evidence, but he or he can't ignore a line of evidence supporting a finding of disability"); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7ᵗʰ Cir. 2005) ("[T]he ALJ must . . . explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review.").

Oak argues that the ALJ violated the Appeals Council's remand order by again failing to properly assess the opinions of Dr. Trulsen and Dr. Jennings. As an initial matter, he argues that the ALJ made "nearly the same conclusory findings" on remand that she did in her initial decision and failed to address the problems noted in the remand order. Dkt. 15 at 17. Oak points out that 20 C.F.R. § 404.977(b) requires the ALJ to "take any action that is ordered by the Appeals Council." However, as the Acting Commissioner argues, the Seventh Circuit has held that "[t]he question whether the ALJ complied with the Appeals Council's remand order is not, in the final analysis, of independent importance. The only question properly before us is whether the ALJ's decision (which the Appeals Council chose to leave undisturbed) is supported by substantial evidence." *Poyck v. Astrue*, 414 F. App'x 859, 861 (7ᵗʰ Cir. 2011) (citing *Skinner v. Astrue*, 478 F.3d 836, 841, 844-45 (7ᵗʰ Cir. 2007); *Steele v. Barnhart*, 290 F.3d 936, 940 (7ᵗʰ Cir. 2002)); *see also Balde v. Astrue*, 2011 WL 3419371, at *17 (E.D. Wis. Aug. 4, 2011) (noting same and collecting cases from other districts). Although Oak argues that the cases cited by the Acting Commissioner are unpublished, he fails to cite any authority to support his contention that an ALJ's failure to comply with the Appeals Council's remand order provides an independent basis for reversal and remand. *See Johnson v. Kijakazi*, 2021 WL 3885535, at *4

(E.D. Wis. Aug. 31, 2021) (citing *Balde* and finding same).  In any event, Oak has failed to demonstrate that the ALJ erred in this case.

Under the regulations applicable to Oak's benefits application, an ALJ generally gives more weight to the medical opinion of a source who has examined a claimant than to the medical opinion of a medical source who has not examined a claimant.  20 C.F.R. § 404.1527(c)(1) (evaluating opinion evidence for claims filed before March 27, 2017).  However, an ALJ may discount an examining physician's opinion and may credit a non-examining physician's opinion for reasons that are supported by substantial evidence in the record. *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014); *see also Czarnecki v. Colvin*, 595 Fed. Appx. 635, 642 (7th Cir. 2015) ("[R]ejecting or discounting the opinion of the agency's own examining physician . . . can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step.").

The regulations applicable to Oak's claim also required the ALJ to consider the following factors in evaluating any non-treating medical opinion: the support and explanation provided for the opinion, the opinion's consistency with the medical record as a whole, the source's specialization, and any other factors that "tend to support or contradict the medical opinion." 20 C.F.R. § 404.1527(c)(3)-(6).  A failure to explicitly discuss each regulatory factor is typically not a stand-alone basis for remand.  *See, e.g.*, *Elder v. Astrue*, 529 F.3d 408, 415-16 (7th Cir. 2008); *Nelson v. Saul*, No. 19-cv-79-jdp, 2019 WL 6522402, at *2 (W.D. Wis. Dec. 4, 2019).

For the reasons set forth below, I find that the ALJ has satisfied these standards with respect to the opinions of Drs. Trulsen and Jennings.

6

**I.  Dr. Trulsen**

After examining Oak and reviewing 13 medical contact notes, Dr. Trulsen diagnosed Oak

with agoraphobia (anxiety disorder involving fear and avoidance of places and situations that

may cause panic[5]), mild neurocognitive disorder due to history of concussion without behavioral

disturbance, mild persistent depressive disorder of late onset, and rule out learning disorder.  AR

780.  He also made the following findings regarding Oak's general mental capacity:

- Slight impairment in ability to understand.

- Slight to occasionally moderate impairment in remembering and following instructions.

- Moderate impairment in sustaining attention, concentrating, and caring out work like tasks with reasonable persistence and pace.

- Moderate to occasionally marked level of impairment in (1) responding appropriately to brief and superficial contact with coworkers and supervisors, and (2) tolerating stress and pressures typically found in an entry-level workplace.

-  No impairment related to respecting authority.

*Id*.

In her initial written decision issued in February 2019, the ALJ gave little weight to the

occasional marked limitations because Trulsen appeared to base them exclusively on Oak's

"subjective reports and were inconsistent with Oak's conservative mental health treatment and

the absence of [abnormal] mental status examination findings despite active substance use."  AR

1842.  However, she gave "great weight" to the remainder of Trulsen's opinion, finding it

---

[5] *See* https://www.mayoclinic.org/diseases-conditions/agoraphobia/symptoms-causes/syc-20355987 (visited October 12, 2022).

"generally consistent with the conservative mental health treatment and absence of mental status examination findings despite substance use." *Id.*

In its remand order, the Appeals Council stated that

> [Dr. Trulsen's marked] limitations do not appear to be based exclusively on the claimant's subjective reports — Dr. Trulsen performed a mental status examination of the claimant and also reviewed some of his medical records. Therefore, [the ALJ's] rationale is insufficient to support assigning little weight to this portion of Dr. Trulsen's opinion. Further, the Administrative Law Judge assigns great weight to the remainder of Dr. Trulsen's opinion (Decision, page 11), but the mental residual functional capacity limitation to performing simple, routine instructions and tasks consistent with SVP level 1 and 2 work (Finding Number 5) may not sufficiently account for the opined moderate impairment with sustaining attention, concentrating, and caring out work like tasks with reasonable persistence and pace. Therefore, further consideration of Dr. Trulsen's opinion is necessary.

AR 1897-98.

In her November 2021 opinion following remand, the ALJ made the following findings at step 2 with respect to Dr. Trulsen's report in discussing Oak's ability to understand, remember, and apply information:

> The findings of the 2016 consultative examination are given little weight as predating the amended onset date by two years but are generally consistent with no more than moderate limitation in [the] area [of understanding, remembering, or applying information]. [Oak] denied being able to perform serial 7s. Other testing of cognition and memory included adequate recall of 2 of 3 items after a 5-minute delay and 1 of 3 items after a 30-minute delay, average digit span of 5 digits forward and 4 digits in reverse, adequate general memory skills and longer-term memory abilities for daily living, and an estimated average-to-low average intelligence based on general use of language. Abstract thinking skills appeared developed somewhat below expected level given his trouble providing general definitions for common proverbs. (Exhibit 5F). In consultative examination in 2020 [with Dr. Marcus Desmonde], mental status examination was remarkable for

8

> not knowing the exact day of the week, average-to-low average concentration for digit recall.  He recalled 2 of 3 items after a 5-minute delay and 1 of 3 objects by the end of the interview. Longer-term recall showed sequencing of events over the last 20 years without confusion.  Judgment and insight were not impaired.

AR 1738.

The ALJ further discussed Dr. Trulsen's opinion at step 4:

> The undersigned gives little weight to Dr. Trulsen's opinion of occasionally marked limitation in relating to others and tolerating stress and pressure as based in *large part* on subjective report and inconsistent with conservative mental health treatment to date. Dr. Trulsen's own examination yielded minimal findings apart from some inconsistent memory findings and the claimant's report of inability to perform serial 7s, which is inconsistent with his performance at a 2020 consultative examination. [Oak's] reported level of panic is not consistent with the medical evidence of record or pattern of intermittent mental health care.  Further, the claimant engaged in substantial gainful activity two years after this examination and opinion.  While the moderate limitations are vague, they are generally consistent with the above limitations and mental status examination findings and given great weight.  To the extent that those limitations could be further interpreted as limiting, they are given little weight as inconsistent with the above limitations and mental status examination findings.

AR 1745 (emphasis added).

Oak generally contends that the ALJ erred in her 2021 decision by:  (1) failing to evaluate the "mental status examinations" completed by Dr. Trulsen, who assessed Oak's subjective complaints through the lens of his professional expertise; (2) providing almost no assessment of the record vis-à-vis Dr. Trulsen's opinion, merely reciting her previous finding about Oak's conservative mental health treatment and absence of mental status examination findings despite substance use; (3) not considering the consistency of Trulsen's opinion with Dr. Desmonde's 2020 examination and mischaracterizing Oak's ability to compute serial 7s in the 2020

9

consultative examination; (4) not inquiring into Oak's failure to seek treatment for his panic; and (5) failing to assess the record regarding evidence of Oak's panic. As discussed below, many of Oak's arguments are perfunctory and unsupported by citations to the record or persuasive legal authority, and those arguments that Oak does develop are insufficient to show that the ALJ committed reversible error.

It is not entirely clear what Oak means by the ALJ's failure to evaluate Trulsen's "mental health examinations" because the ALJ devoted several paragraphs to the doctor's report. However, it appears that Oak faults the ALJ for noting that Trulsen relied in large part on Oak's subjective complaints, which the ALJ found to be not entirely consistent with the record as a whole.[6]

An ALJ generally is permitted to discount a medical opinion that rests too heavily on subjective complaints. *See Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) (ALJ properly discounted medical opinion relying entirely on subjective complaints where physical examination reflected generally unremarkable findings); *Givens v. Colvin*, 551 F. App'x 855, 861 (7th Cir. 2013) ("An ALJ may give less weight to an opinion that appears to rely heavily on the claimant's subjective complaints, even if the source of that opinion had examined the claimant."). Oak points out that by their very nature, psychological assessments must rely on interpretations of the individual's subjective reports, and argues that the ALJ should have considered Trulsen's ability to decipher Oak's self-reported symptoms. *See Mischler v. Berryhill*, 766 F. App'x 369, 375

---

[6] The ALJ provided several good reasons for not crediting the full extent of Oak's subjective reports. *See* AR 1741-42 (discussing minimal mental status findings, conservative care, gaps in treatment, and Oak's ability to function). Although Oak questions a few of the ALJ's reasons in the context of discussing Dr. Trulsen's opinion, he has not challenged the ALJ's subjective symptom analysis and thus has waived any argument that it is erroneous.

(7th Cir. 2019) ("A psychiatrist does not merely transcribe a patient's subjective statements. Mental-health assessments normally are based on what the patient says, but only after the doctor assesses those complaints through the objective lens of her professional expertise.").

However, on remand, the ALJ did not discount Dr. Trulsen's opinion solely because he relied on Oak's subjective complaints. She also found that Dr. Trulsen performed testing that revealed generally minimal findings except for some memory issues and the inability to perform serial 7s:

> Other testing of cognition and memory included adequate recall of 2 of 3 items after a 5-minute delay and 1 of 3 items after a 30-minute delay, average digit span of 5 digits forward and 4 digits in reverse, adequate general memory skills and longer-term memory abilities for daily living, and an estimated average-to-low average intelligence based on general use of language.

> AR 1742-43.

Although the ALJ acknowledged that Oak claimed during Dr. Trulsen's exam that he was unable to perform the serial 7s test, *see* AR 779, she found his claim to be inconsistent with his accurate performance of the same test during Dr. Desmonde's 2020 consultative examination, *see* AR 3555 ("[H]e was able to compute serial 7 additions to 100 accurately to 121, [and] serial 7 subtractions [from] 100 more slowly [but] accurately to 86."). AR 1745.

Oak argues that the ALJ erred in finding an inconsistency between Trulsen's and Desmonde's serial 7 findings, but it is unclear what point he is trying to make. The ALJ could reasonably find that Oak's two test performances were inconsistent. *See Callaway v. Saul*, 2020 WL 2214385, at *2 (W.D. Wis. May 7, 2020) ("An ALJ may not interpret evidence that is beyond the abilities of a lay person to understand . . .. But that rule doesn't preclude the ALJ from using common sense to evaluate all the evidence, including medical records.") (internal

citations omitted).   Similarly, it was reasonable for the ALJ to find that Oak's overall performance during Trulsen's examination–especially when considered along with other evidence of record–did not support the limitations in Trulsen's opinion.  *See id.* ("[T]he court has stated many times that it is appropriate to consider an expert's internal inconsistencies when determining how much weight to give an opinion.").

In addition to the above, the ALJ cited Oak's conservative and intermittent mental health care, as well as his ability to work in 2018.  Oak makes conclusory statements that the ALJ "cherry-picked the record," "failed to consider or evaluate the evidence in general," "provided almost no assessment of the record vis-à-vis Dr. Trulsen's opinion," and did not consider the consistency between Dr. Trulsen's and Dr. Desmonde's opinions.  Dkt. 15 at 19 and 21. However, Oak does not identify specific holes in the ALJ's analysis or explain how any particular error harmed him.  Moreover, Oak has not identified any unaddressed evidence that shows he would be entitled to more significant limitations.  *See Loveless*, 810 F.3d at 508 (claimant not entitled to remand if he does not "identify medical evidence that would justify further restrictions").

Contrary to Oak's contention, the ALJ reviewed the medical record at length and provided numerous examples of Oak's conservative and intermittent mental health treatment and normal mental status examinations.  AR 1738-39, 1742-44.  Although the ALJ was under no obligation to discuss every piece of evidence, *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015), she did discuss evidence favorable to Oak's claims and noted the similarities between Dr. Desmonde's and Dr. Trulsen's reports.  AR 1745-46.  However, the ALJ found Dr. Desmonde's opinions that Oak's marked limitation in understanding, recalling, and applying print

12

information and moderate limitation in interacting were not persuasive for the same reasons as
Dr. Trulsen's opinions.[7]  AR 1745.

Oak makes the perfunctory argument that the ALJ violated Social Security Ruling (SSR)
16-3p by not exploring the possible reasons that Oak did not pursue treatment for his feelings
of panic.  *See Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (ALJ erred in drawing adverse
inference from claimant not undergoing treatment without assessing ability to pay particularly
given that claimant was an applicant for SSI benefits).  SSR 16-3p requires an ALJ to "consider
possible reasons for a failure to seek treatment."  *Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir.
2021).  Here, the ALJ asked Oak at the hearing why he had not sought counseling for the past
six years.  AR 1814.  Oak initially responded that there was a "super long wait" and then
clarified that his primary care doctor had suggested counseling "maybe a month or two ago."
*Id*.

Apart from this vague testimony, Oak cites nothing in his treatment records or testimony
to support his claim that he had tried to pursue therapy but none was available.  *See Bekeleski v.
Saul*, 2020 WL 859266, at *7 (W.D. Wis. Feb. 21, 2020) ("[P]laintiff's failure to follow her
doctors' recommendations for exercise draws into question her actual interest in improving her
health and her ability to walk longer distances.  It may be that plaintiff could not afford the
exercise, but she did not raise that as a problem with any of the doctors who suggested it.").
Moreover, an ALJ need not accept a claimant's explanation for failing to pursue treatment, and
after considering any explanation, the ALJ may draw negative inferences.  *Morrison v. Saul*, 806

---

[7] As the Commissioner observes, although it's not clear, Oak does not seem to argue that the ALJ
erred in evaluating Dr. Desmonde's opinion.

F. App'x 469, 474-75 (7th Cir. 2020) (ALJ asked claimant why he did not follow up on referrals, considered his explanation, and rejected it). Here, the ALJ could reasonably conclude that Oak would have been able to obtain counseling at some point in the past six years if he had an interest in doing so. Without more, Oak cannot show reversible error on this ground.

Finally, Oak says that the ALJ failed to assess evidence of his panic, specifically instances in which his medication was ineffective or caused a side effect. *See* dkt. 15 at 24 (citing AR 2330 (April 2015 report of anxiety and request to go back on Paxil); AR 2383 (November 2015 report stopped Paxil because it made him more anxious); AR 815 (October 2017 note that uses Xanax for panic attacks and Zoloft ineffective); AR 3309 (January 2020 note that Paxil prescribed for moderate depression and anxiety); AR 3301 (Paxil dose increased April 2020); 3740 (June 2021 report that increased Paxil dose made him feel like zombie)).

However, the ALJ noted Oak's claims of feeling "like a zombie," as well as his reports that his medication was ineffective at times. AR 1744. She noted that Oak's primary care physician, Dr. Jean Hoyer, had warned Oak on multiple occasions about mixing alcohol with his psychotropic medication. AR 1742-44 (citing AR 545-47, 3759). The ALJ also noted that Oak had reported in April 2020 that Paxil 10 mg was helping him and had asked for an increase dosage to 20 mg. AR 1744 (citing AR 3301). Oak was then "lost to primary care until May 21, 2021," when Dr. Hoyer raised some suspicion that Oak had been self-medicating with alcohol and increased his Paxil to 40 mg. *Id.* (citing AR 3756, 3759). The ALJ went on to note that on June 17, 2021, Oak reported that the higher dose of Paxil made him feel like a zombie so he resumed the 20 mg dose, which helped some; Oak requested a mental health referral to receive further relief. *Id.* (citing AR 3740-42). At that appointment, Dr. Hoyer noted mildly anxious

mood, mildly flattened affect, and mildly reduced eye contact, and made Oak's requested referral to mental health. *Id.*

Even if the ALJ erred in some respect in her discussion of Oak's treatment history, she gave other good reasons for discounting Oak's allegations, including his unremarkable mental status examinations, work activity, and daily activities. Notably, two years after Dr. Trulsen's examination, Oak engaged in *skilled* work, earning $27,180.00 in 2018. AR 1745. Although Oak says that he was unable to maintain substantial gainful activity for all of 2018, his work is evidence that he is not as limited as he claims. *See* AR 213 (ALJ's first decision discussing 2018 work); *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) ("Although the diminished number of hours per week indicated that [the claimant] was not at his best, the fact that he could perform some work cuts against his claim that he was totally disabled."); *Wildenberg v. Kijakazi*, 2021 WL 4077498, at *2-3 (W.D. Wis. Sept. 8, 2021) (work performance could reasonably suggest that claimant is not as limited as alleged).

## II.  Dr. Jennings

In October 2016, Dr. Jennings reviewed the record and assigned great weight to the opinion of Dr. Trulsen. AR 290. She opined that Oak had moderate limitations in several functional areas and found that Oak can understand, remember, and carry out two-step commands involving simple instructions, AR 292; could focus to complete tasks requiring two-to three-steps; and would do better in jobs that do not require frequent contact with the public or coworkers, AR 293.

In her 2019 decision, the ALJ gave little weight to Jennings's opinion, finding the two-step task restriction overly restrictive in light of the lack of cognitive findings.  AR 208.  In its remand order, the Appeals Council stated that this reason by itself was not sufficient to support discounting Jennings's opinion because the mental status examination performed by Dr. Trulsen did identify some cognitive difficulties, which Dr. Jennings had cited in support of the two-step command limitation.  AR 1898.

In her 2021 opinion following remand, the ALJ again gave little weight to most of Dr. Jennings's opinion, noting that she—like Dr. Trulsen—had issued it years before Oak's amended onset date.  AR 1744.  Although Oak suggests that the ALJ did not consider Jennings opinion because it was made prior to his onset date, the record does not support such a conclusion.  The ALJ devoted a lengthy paragraph to Dr. Jennings's findings and explained that she found the doctor's two-step command and two- to three-step task limitations inconsistent not only with Dr. Trulsen's 2016 consultative examination but also inconsistent with the more recent findings from Dr. Desmonde's 2020 consultative examination, and with Oak's ability to engage in significant work activity in 2018.  AR 1745.

Oak generally criticizes the ALJ for "not showing sufficient support and rationale" and not outlining "her opinion and the medical evidence or address[ing] how it was or was not supported or consistent with the record."  Dkt. 15 at 27.  These criticisms are incorrect.  The ALJ noted that, even though Dr. Trulsen found some issues with Oak's memory related to item recall and serial 7s, Dr. Trulsen found that Oak had adequate general memory skills and long-term memory abilities for daily living and a low-to-average estimated intelligence.  AR 1745.  Moreover, in Desmonde's 2020 examination, Oak demonstrated event sequencing over the last

20 years without confusion, he computed serial 7s accurately (albeit slowly) in reverse, and he showed no impairment in judgment or insight. *Id.* Further, the ALJ found it significant that Oak's treatment record showed no psychomotor slowing. *Id*. Apart from expressing disagreement with how the ALJ weighed Dr. Jennings's opinion, Oak makes little attempt to explain why the ALJ's findings lack substantial evidence.

### III. Conclusion

In sum, Oak has not shown that the ALJ committed reversible error in evaluating the opinions of Drs. Trulsen or Jennings. Although Oak has pointed to evidence that could support a finding of disability, the ALJ considered this evidence and she gave valid reasons for reaching a different conclusion. This is all she was required to do under the deferential standard of review. The fact that a different fact-finder could have weighed the evidence differently does not make the decision erroneous. *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017); *Kolar v. Berryhill*, 695 Fed. Appx. 161, 162 (7th Cir. 2017) ("Almost any conclusion an ALJ reaches in such situations may be inconsistent with some evidence in the record and consistent with other evidence."). Accordingly, the court will affirm the ALJ's decision.

**ORDER**

IT IS ORDERED that the that the decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, denying plaintiff Brian Oak's application for disability benefits, is AFFIRMED.  The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 12th day of December, 2022.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge

18